IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARLON J. POWELL,

                                                                                                                   OPINION and ORDER

                           Plaintiff,

                                                                                                                  10-cv-202-bbc

       v.

RICK RAEMISCH, RANDY HEPP,
MARIO GARCIA and
JOHN C. SAMUELSON,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In this prisoner civil rights lawsuit, plaintiff Marlon Powell contends that defendants Rick Raemisch, Randy Hepp, Mario Garcia and John C. Samuelson violated his First, Eighth and Fourteenth Amendment rights by denying him access to food during the 2009 Ramadan holiday without a due process hearing. He has requested leave to proceed <u>in forma pauperis</u> and has no means with which to pay an initial partial payment of the filing fee. Plaintiff is a prisoner confined at the Jackson Correctional Institution. Because he is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed on his claims if he has had three or more lawsuits or appeals dismissed for lack of legal merit, or if his complaint is legally frivolous, malicious, fails to state a claim upon which relief may be

1

granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e). Plaintiff is also a pro se litigant, which means his complaint will be construed liberally as it is reviewed for these potential defects. Haines v. Kerner, 404 U.S. 519, 521 (1972).

Applying these rules, I conclude that plaintiff states a claim under 42 U.S.C. § 1983 for violation of his First Amendment right to free exercise of religion against defendants Garcia and Samuelson because he has alleged sufficient facts to indicate that they substantially burdened his religious practice by interfering with his ability to receive meal bags during Ramadan in 2009. In addition, although plaintiff did not mention the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-1(a)(1)-(2), the same allegations state a claim against Garcia and Samuelson under that Act, which overlaps the free exercise clause of the First Amendment. Plaintiff's allegations fail to state a claim against defendants Raemisch and Hepp because they do not suggest that these defendants were personally involved in the alleged interference with plaintiff's religious practice.

Plaintiff's Eighth and Fourteenth Amendment claims will be dismissed. Because plaintiff was not denied all food and he had other nutritionally adequate food available to him during the regular meal hours in the prison, his allegations do not rise to the level of an Eighth Amendment violation. In addition, plaintiff's allegations do not support a due process claim because they do not allow an inference to be drawn that his loss of Ramadan

meal bags resulted in an "atypical and significant hardship" requiring process.

In his complaint, plaintiff alleges the following facts.

## ALLEGATIONS OF FACT

### A. Parties

Plaintiff Marlon J. Powell is a prisoner at the Jackson Correctional Institution. Defendant Rick Raemisch is Secretary of the Department of Corrections. The remaining defendants work at the Jackson Correctional Institution: defendant Randy Hepp is the warden, defendant Mario Garcia is a correctional officer and defendant John C. Samuelson is the chaplain.

### B. Denial of Ramadan Meal Bags

Plaintiff is a Muslim who participates in Ramadan, a religious holiday lasting one month that requires participants to fast between the hours of sunrise and sunset. Prisoners at the Jackson Correctional Institution can request to be placed on the Ramadan participation list, which entitles them to receive special Ramadan meal bags. These meal bags allow prisoners to eat before sunrise and after sunset, which are beyond the regular meal times in the prison. During the month of Ramadan in 2009, plaintiff requested to be placed on the Ramadan participation list.

3

Plaintiff received his meal bags for the early part of Ramadan in 2009. However, on August 31, 2009, defendant Garcia "removed food items" from plaintiff's Ramadan meal bag during a search of his living quarters. Specifically, defendant Garcia removed fruit that he believed was in excess of what plaintiff was allowed to have. The next day, on September 1, defendant Garcia again removed food items from plaintiff's Ramadan meal bag. On September 2, defendant ordered another officer to search plaintiff's cell, and food items were again removed from his cell. That evening, at approximately 8:00 p.m., defendant Garcia wrote an incident report and told plaintiff that he was removing plaintiff from the Ramadan participation list because defendant Garcia believed plaintiff was hoarding food.

The day after defendant Garcia wrote the incident report, September 3, plaintiff received his breakfast meal bag at 4:00 a.m., but did not receive another Ramadan meal bag that evening or in the following days. On September 5, plaintiff went to ask a chaplain "about not having received [his] Ramadan meal bags for the past couple days." The chaplain told plaintiff that he was still on the Ramadan participation list.

On September 6, plaintiff was called to the officer's station by Sargent Brown, who asked plaintiff whether he was still participating in Ramadan. Plaintiff told him that he was and Brown asked plaintiff when he had last eaten. Plaintiff told him that he had not eaten since 4:00 a.m. on September 3. In the evening of September 6, plaintiff went to the Health Services Unit because he "was not feeling well." While there, he "explained [his] situation."

4

On September 7, plaintiff told an officer that he "was not feeling well." This officer told plaintiff that Captain Jensen wanted to speak with him, which plaintiff did. Plaintiff explained that defendant Garcia had informally removed his name from the Ramadan participation list, that he had not received any Ramadan meal bags since September 3 and that he therefore had not eaten since then. The captain "exhibited extreme concern" and told plaintiff that he would receive a Ramadan meal bag the next morning.

Plaintiff did not receive a Ramadan meal bag the next morning, September 8. He again went to the Health Services Unit because he was experiencing diarrhea, stomach cramps and lightheadedness. He saw the nurse, who noted his high blood pressure and observed that he "was experiencing difficulty walking, sitting, standing." He complained to the nurse that he "was not getting enough food," and in fact "was receiving no food."

Plaintiff continued to participate in Ramadan by fasting between sunrise and sunset. On September 16, plaintiff again spoke with Captain Jensen and told him that he had not eaten since several days before when the captain had provided plaintiff with a saved supper tray from the dining room. Captain Jensen "ordered the unit officer to again provide [him] with a saved supper tray from the dining room" so that plaintiff could eat after sunset. On or around that same day, he was called to the Health Services Unit again regarding his complaints that he was "dizzy, weak, and had been vomiting earlier that day," but he was provided no relief.

5

Plaintiff continued to fast for the rest of Ramadan in accordance with his religious beliefs. Plaintiff received no Ramadan food bags after he received the breakfast bag on September 3. Altogether, plaintiff did not receive the Ramadan meal bags for eighteen days during Ramadan in 2009. He received saved supper trays on two occasions. When he did not receive these sources of food, he "did not have any food to eat during non-fasting hours." He did not eat the regular institutional food offered by the prison because "institutional food is served during the hours in which a person participating in Ramadan is fasting and the only way in which [he] could have access to the institutional food served in the dining room was to break [his] fast."

Although plaintiff was able to maintain his fast, his "ability to do so was greatly hindered"; the circumstances "interfered with [his] ability to enjoy the full spiritual experience of Ramadan." He felt he had "to constantly worry about [his] next meal, if it would come"; "anger got the best of [him]"; he had to "continuously ask if [he] could go to HSU when [he] first began feeling sick." Plaintiff's "entire Ramadan experience in 2009 . . . was the worst Ramadan that [he] [had] ever before participated in since becoming a Muslim."

Plaintiff was never written a conduct report. He did not receive a disciplinary hearing and there was never a finding of guilt regarding any hoarding or why he was removed from the Ramadan participation list. The prison's chaplain has the exclusive authority to remove

6

prisoners from the Ramadan participation list. Defendant Samuelson officially removed plaintiff from the Ramadan participation list on September 16, thirteen days after plaintiff received his last Ramadan meal bag.

## C. Grievances

Plaintiff filed four grievances about his treatment during Ramadan. (Plaintiff does not describe in the body of his complaint what he said in the grievances or how the Department of Corrections responded to them, but he does submit copies of his grievances and the department's responses.) On September 1, he submitted an "offender complaint" stating that defendant Garcia had taken food items out of his meal bag. On September 7, plaintiff submitted another offender complaint, stating that he did not receive his breakfast or supper meal bag on September 4 and had not received a meal bag in three days despite the fact that he was officially still on the Ramadan participation list. The same day, plaintiff filed another offender complaint, adding that he did not receive the morning meal bag for that day, either. On September 11, plaintiff filed a fourth offender complaint on the matter, this time stating that defendant Garcia had informally removed him from the Ramadan participation list by striking out his name on the list held in the unit.

The inmate complaint examiner recommended dismissal of each of these grievances (one with "modification"), noting that defendant Garcia had stated that plaintiff had been

7

hoarding food and that an incident report had been written for hoarding and was under investigation. The inmate complaint examiner noted in response to one of the grievances that if plaintiff had been improperly removed from the participation list (without a chaplain), he would still be able to receive meal bags by contacting unit staff, the main kitchen or his unit supervisor. Defendant Hepp accepted the inmate complaint examiner's recommendation in each instance. On appeal, the Corrections Complaint Examiner recommended dismissal, which Ismael Ozanne from the Office of the Secretary adopted as the "decision of the Secretary [defendant Raemisch]."

OPINION

A. First Amendment and RLUIPA Claims

1. Garcia's and Samuelson's interference with observance of Ramadan

Plaintiff's principal claim is one for interference with his religious practices. Such interference can violate both the First Amendment's "free exercise" clause and RLUIPA. (As mentioned above, plaintiff did not assert a claim under RLUIPA, but plaintiffs are not required to plead legal theories, only facts.)

To come within the protection of the free exercise clause of the First Amendment, plaintiff must show that he has a sincere religious belief and that his religious exercise is substantially burdened. Koger v. Bryan, 523 F.3d 789, 797-98 (7th Cir. 2008); Vision

Church v. Village of Long Grove, 468 F.3d 975, 996-97 (7th Cir. 2006). Similarly, RLUIPA prohibits a "substantial burden" on religious exercise. 42 U.S.C. § 2000cc-1(a)(1)-(2). A""substantial burden" is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003); see also Koger, 523 F.3d at 798-99 (applying Civil Liberties standard to prisoner RLUIPA claim).

Many courts have held that denying a Muslim prisoner the opportunity to participate in fasting during the month of Ramadan may be a substantial burden on that prisoner's religious exercise. E.g., Makin v. Colo. Dept. of Corrections, 183 F.3d 1205, 1213 (10th Cir. 1999) (holding that failure to deliver meals at times a Ramadan participant could eat was sufficient burden on spiritual experience of Ramadan to give rise to free exercise claim); Conyers v. Abitz, 2007 WL 2772763, at * 6 (E.D. Wis. Sept. 20, 2007) (holding that failure to allow prisoner opportunity to participate in Fast of Ramadan can be substantial burden on prisoner's free exercise rights).

Moreover, the Court of Appeals for the Seventh Circuit has held that special diets required by a prisoner's religious beliefs are protected under the free exercise clause. Hunafa v. Murphy, 907 F.2d 46, 47 (7th Cir. 1990). In Hunafa, a Muslim prisoner in segregation asserted that he was "being put to an improper choice between adequate nutrition and observance of the tenets of his faith" by receiving his pork substitute on a tray that also held

9

pork.

Plaintiff's allegations parallel the facts in Hunafa: he was forced to choose between receiving adequate nutrition and observing Ramadan as required by his religion when defendant Garcia informally took him off the Ramadan participation list for hoarding and later when defendant Samuelson took him off the list formally. Plaintiff adds that although he was able to complete the fasting required during Ramadan, the lack of food kept him enjoying Ramadan because he was suffering health problems and his hunger distracted and distressed him. These allegations support a conclusion that the lack of Ramadan meal bags imposed a substantial burden on his religious practice. Makin, 182 F.3d at 1209 (finding substantial burden where plaintiff was able to maintain his fast but "unable to enjoy the full spiritual experience of Ramadan" because of defendants' failure to provide him with Ramadan meals); Warren v. Peterson, 2008 U.S. Dist. LEXIS 76453, * 13 (N.D. Ill. 2008) (finding plaintiff had sufficiently alleged a First Amendment claim where plaintiff "either had to violate his religious strictures on food or, as he chose, rely on insufficient nutrition").

Even if a prisoner's religious exercise is substantially burdened, any burden violates First Amendment rights only if the burden is not reasonably related to a legitimate penological interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-51 (1987). Under RLUIPA, the analysis is quite different (and easier for a prisoner to meet). Once a plaintiff shows a substantial burden on a religious exercise, the defendants must show that the

10

restriction furthers "a compelling governmental interest" and does so by "the least restrictive means." Cutter v. Wilkinson, 544 U.S. 709, 712 (2005). At a later stage, defendants may challenge whether plaintiff's observance of Ramadan was sincere and may argue that their response to his alleged "hoarding" was appropriate despite plaintiff's desire to continue to observe Ramadan. However, at this early stage, all inferences must be drawn in favor of plaintiff. From the allegations, it is reasonable to infer that: plaintiff had a sincere belief in the tenets of Islam; observing Ramadan was a central part of his religion; and defendants Garcia and Samuelson did not have a "legitimate penological interest" or respond "by the least restrictive means" when they took plaintiff off the Ramadan participation list, effectively cutting off his access to before- and after-hours meals.

Plaintiff should also be aware that although I have allowed him to proceed on both a First Amendment and a RLUIPA claim, under Nelson v. Miller, 570 F.3d 868 (7th Cir. 2009), plaintiff cannot recover money damages for violations of RLUIPA. Plaintiff may still pursue injunctive relief under RLUIPA to prevent defendants from burdening his religious practices in the future. Because at this point it remains unclear whether plaintiff intends to seek such an injunction, the RLUIPA claims will remain a part of this case. If plaintiff decides not to pursue injunctive relief, he should notify the court and defendants as soon as possible.

2.  Involvement of Raemisch and Hepp

Plaintiff's claims against Raemisch and Hepp are less straightforward. To start with, the complaint proper does not mention either of these individuals (except to give their titles) or explain what they are supposed to have done. Nonetheless, plaintiff includes copies of responses to his grievances showing that Raemisch and Hepp played a role in responding to plaintiff's grievances. In this case, that is not enough to allow a claim against either one under 42 U.S.C. § 1983.

For a defendant to be liable under § 1983, he or she must have participated directly in a violation of the plaintiff's constitutional rights. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1036 (7th Cir. 2003). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996). With respect to supervisors, "an official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" to it. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (citations and internal quotations omitted).

The only involvement defendant Hepp had that related to the alleged interference

12

with plaintiff's religious practices is Hepp's dismissal of each of plaintiff's grievances. Raemisch's "involvement" is even more tenuous: another individual (Ismael Ozanne) signed dismissals on Raemisch's behalf. However, these dismissals came after the inmate complaint examiner recommended dismissal on the grounds that the matter was being investigated and plaintiff had other means to obtain meal bags upon request. Under these circumstances, there is no basis to infer that either Hepp or Raemisch facilitated, approved, condoned or turned a blind eye to an interference with plaintiff's religious practices. Either of these individuals was entitled to accept the findings of the inmate complaint examiner that meal bags were still available by other means and therefore had no obligation to pursue the matter any further or intervene. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("no prisoner is entitled to insist that one employee do another's job"). Plaintiff's claims against Hepp and Raemisch will be dismissed.

### B. Eighth Amendment Claim

Petitioner contends that his inability to receive meal bags also violated his Eighth Amendment rights. The Eighth Amendment requires that prison officials provide humane conditions of confinement, which include the basic necessities of life such as clothing, shelter, medical care, and food. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Under the Eighth Amendment, a prisoner has a right to sufficiently nutritious and adequate food.

13

French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986) ("The state must provide an inmate with a 'healthy, habitable environment.' This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."); Farmer at 832-33 (the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food"). The question in a food deprivation case is whether the defendants were deliberately indifferent to a substantial risk of serious harm to the inmate's health. Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001).

As plaintiff points out, his inability to receive meal bags resulted in his not eating food for eighteen days during the month of Ramadan in 2009. However, plaintiff admits that nutritionally adequate food was available to him during the prison's regular dining hours. Plaintiff chose not to eat that food because he wanted to maintain his fast for Ramadan. Because prison officials afforded plaintiff adequate nutrition, they cannot be said to have been deliberately indifferent to a risk of food deprivation when he decided on his own to forgo that nutrition for his religion. Forcing a prisoner to choose between nutrition and his religious beliefs does not violate the Eighth Amendment; therefore, plaintiff's Eighth Amendment claim will be dismissed.

This conclusion does not mean prison officials can interfere with a prisoner's religious beliefs with impunity; only that the *Eighth Amendment* does not protect prisoners from such

14

interferences, even when the interference causes the prisoner to make unhealthful choices to conform with his religion.

### C. Due Process Claim

Finally, plaintiff contends that defendants violated his Fourteenth Amendment right to due process because he was not given process before defendant Garcia's allegation of "hoarding" was used against him to take away his meal bags. The due process clause does not entitle a prisoner to process every time he loses a privilege or is taken to more restrictive cell conditions. Unless the change in circumstances "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 483-84 (1995), "the state is free to use any procedures it chooses, or no procedures at all." Montgomery v. Anderson, 262 F.3d 641, 644 (7th Cir. 2001).

In this case, the change in circumstances is the loss of a privilege: the ability to receive meal bags instead of eating during normal meal hours. Although plaintiff tries to frame the change in circumstances in terms of his not receiving any food at all, as explained above, prison officials did not stop plaintiff from eating during normal meal hours; they just stopped him from receiving meal bags. The loss of a *privilege* not afforded all prisoners cannot be called an "atypical and significant hardship" under Sandin. Again, this is not to say that plaintiff was required to abandon his religious beliefs; only that the *due process* clause

15

does not protect a prisoner from interference with the practice of his religion.

ORDER

IT IS ORDERED that

1. Plaintiff Marlon J. Powell's request for leave to proceed is GRANTED on his claim that defendants Mario Garcia and John C. Samuelson violated his First Amendment right to free exercise of his religionand violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) by preventing plaintiff from receiving meal bags during Ramadan in 2009.

2. Plaintiff's claims that defendants Rick Raemisch and Randy Hepp violated the First Amendment and RLUIPA and that defendants Raemisch, Hepp, Garcia and Samuelson violated the Eighth Amendment and the Fourteenth Amendment by depriving plaintiff of meal bags are DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

3. With respect to defendants Raemisch and Hepp, plaintiff's complaint is DISMISSED.

4. For the remainder of this lawsuit, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff has learned what lawyer will be representing defendants, he should serve the lawyer directly rather than defendants. The

court will disregard any documents submitted by plaintiff unless plaintiff shows on the court's copy that he has sent a copy to defendants or to defendants' attorney.

5. Plaintiff should keep a copy of all documents for his own files. If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

6. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on the state defendants. Under the agreement, the Department of Justice will have 40 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint for the defendants on whose behalf it accepts service.

7. Because I have dismissed a portion of plaintiff's complaint for one of the reasons listed in 28 U.S.C. § 1915(g), a strike will be recorded against plaintiff.

8. Plaintiff is obligated to pay the unpaid balance of his filing fee in monthly payments as described in 28 U.S.C. § 1915(b)(2). This court will notify the warden at the Jackson Correctional Institution of that institution's obligation to deduct payments until the

17

filing fee has been paid in full.

Entered this 11th day of June, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

18